John Thedford SIMS et al., Appellant,

v.

COSDEN OIL & CHEMICAL COMPANY, Appellee.

No. 11–82–230–CV.

Court of Appeals of Texas, Eastland.

Dec. 1, 1983.

Rehearing Denied Jan. 12, 1984.

Wheelco Oil and Gas Company, Inc. After a jury trial in which all issues were answered in Cosden's favor, judgment was rendered against all Defendants for the sum of $343,109.84 in actual damages and $1,750,000 in exemplary damages. Attorney fees were awarded against Wheeler and the two companies in the sum of $38,500 in the trial court plus $10,000 in the Court of Appeals and an additional $10,000 if appealed to the Supreme Court. All Defendants appeal. We reverse the judgment and remand the cause.

The jury's answers to the special issues may be summarized as follows: (1) Wheeler and the two companies agreed to sell oil to Cosden; (2) Cosden paid for oil which was represented to have been delivered; (3) Those three Defendants failed to deliver that oil; (4) Cosden paid to, or for the benefit of, those three Defendants $343,109.84 for oil which Cosden did not receive; (5) Cosden's reasonable attorney fees are $38,500 in the trial court plus $10,000 if appealed to the Court of Appeals and $10,000 more if appealed to the Supreme Court; (6A) Wheeler and the two companies entered into a conspiracy to receive money from Cosden for oil which was not delivered; (6B) Sims entered into the conspiracy; (7A) Defendants failed to deliver oil which was represented to have been pumped into Cosden's pipeline; (7B) Cosden suffered damage; (8) Defendants' conspiratorial actions were a cause of Cosden's damage; (9) $343,109.84 would compensate Cosden for the actual damages caused by Defendants' conspiratorial actions; and (10) The sum of $1,750,000.00 should be assessed against Defendants as exemplary damages.

██ Defendants have briefed 15 points of error. We overrule points 1, 2, 3, 4, 5, 6, 13 and 14 insofar as they contend that there was "no evidence" to support the jury's answers to special issues 1, 2, 3, 4, 6A, 6B, 7A, 7B, 8, 9 and 10. In reviewing these points, we have reviewed the evidence in its most favorable light, "considering only the evidence and inferences which support the findings, and rejecting the evidence and inferences contrary to the findings." *Mar-*

John H. Green, Odessa, Mike Hatchell, Ramey, Flock, Hutchins, Jeffus, McClendon & Crawford, Tyler, for appellant.

Donald E. Godwin, Maxwell, Godwin & Carlton, Dallas, for appellee.

DICKENSON, Justice.

Cosden Oil & Chemical Company sued John Thedford Sims, Dwight Chester Wheeler, Jaco Oil Company, Inc. and

*tinez v. Delta Brands, Inc.,* 515 S.W.2d 263 at 265 (Tex.1974). Viewed in that light, Cosden's evidence and the inferences drawn therefrom are sufficient to show that all four Defendants engaged in a conspiracy and caused Cosden to pay $343,109.84 for oil which was not delivered.

The disposition of this appeal is determined by our ruling on points of error 10, 11 and 12. These related points present Defendants' contentions that the trial court erred in excluding the testimony of their expert witness concerning his internal examination of Cosden's meter in support of his opinion that the meter was broken. We sustain these points of error because the excluded evidence was material, relevant and admissible. We need not discuss the other points of error because, even if sustained, they would only result in a remand of the cause.

Cosden proved during its case that a "drop meter" was placed between Defendants' storage tank and Cosden's pipe line to establish that no oil was being delivered in fact, even though "run tickets" showed the delivery of substantial amounts of oil. Cosden offered evidence that the meter was tested before and after its installation, that it was working properly, and that it showed the delivery of only two-tenths of a barrel of oil, from December 17, 1980, to January 5, 1981, when the run tickets represented the delivery of approximately 1,200 barrels of oil. This evidence was introduced in support of Cosden's claim for damages for oil purchase payments from June through November of 1980.

In rebuttal, Defendants attempted to show that Cosden's "drop meter" was not operable. Defendants' expert, Byron Glenn Taylor, testified that he works for Basin Testers, Inc. and that he is familiar with meters such as Cosden's "drop meter." He had been working with meters for about 25 years. Taylor examined Cosden's meter on July 27, 1981, at the Martin County Courthouse at Stanton, Texas. While the meter belonged to Cosden, it had been subpoenaed by Defendants and introduced into evidence by them during their criminal trial. After their acquittal, the meter was left at the courthouse. A deputy sheriff was with Taylor during his examination of the meter. Taylor also had a photographer who made pictures as he conducted his examination. When the witness testified that he took the meter apart, Cosden moved to strike his testimony because the witness "had tampered with court evidence." At first, the objection was overruled. After the jury was excused, Cosden renewed its objection, and the trial court then ruled that he was going to exclude any testimony of what he saw inside the meter. The jury was later instructed to disregard the witness' testimony that "there was no mechanical linkage inside that would enable the counter to turn." In the jury's presence, the Court instructed the witness "not to testify as to anything he saw inside the meter." Further, the Court refused to permit the witness to take the meter apart in the jury's presence; however, the jury was permitted to hear the witness express his opinion that the meter would not give a true reading, but it was not permitted to hear his explanation of that opinion.

The jury was also permitted to hear the deputy sheriff testify that he took the meter and locked it up in the evidence room after the criminal trial ended and was present when Mr. Taylor examined the meter "inside and outside." The deputy said he unlocked the evidence vault and let Taylor look at the meter. Pictures were taken while that was being done. The Court then instructed that witness not to testify as to "anything that pertains to the inside of the meter." He was permitted to say that no altering was done to the meter. The meter was released to Cosden employees on August 31, 1981, (after Defendants were acquitted in the criminal case and prior to the trial of the civil case), and the deputy said that changes have been made in the meter since that time.

The Bill of Exception shows that Defendants' expert witness looked inside the drop meter after he took the head off. The up-shaft gear was not pinned. The pin was missing. Each of the two gears has to be

pinned before the meter will give an accurate measurement. He said the meter would not register oil running through it. The witness swore that he put the meter back together "exactly like I found it." During the Bill, the witness took the head off the meter. At that time, the pin was in its proper place. The witness swore again that the pin was not in place when he examined the meter at the sheriff's office. His opinion was that the meter has been repaired since that time. The witness then put the meter back together. The Bill also includes the photographs which were made of the inside of the meter.

■ Cosden argues that TEX.R.CIV.P. 167 establishes "the appropriate means and methods in which parties to suit shall conduct discovery of documents and things." Of course, if Defendants had proceeded under that rule, we would not be faced with the question. However, that rule does not state that it is the exclusive means for examining and testing physical evidence. We hold that Defendant's failure to proceed under Rule 167 does not bar the admissibility of relevant, material evidence. Further, we note that the examination of the drop meter did not "extend to destruction or material alteration" of the meter, for Cosden placed the meter back into service subsequent to the disputed examination.

Cosden cites three cases in support of its argument that the trial court did not err in excluding this evidence. While each case contains language supporting Cosden's position, all of the cases are factually distinguishable. The only Texas case is *Day & Zimmermann, Inc. v. Strickland,* 483 S.W.2d 541 (Tex.Civ.App.—Texarkana 1972, writ ref'd n.r.e.). In that case, an expert witness trespassed upon plaintiffs' home to make an unauthorized inspection, and the court notes that this testimony was cumulative to other testimony in the record. See and compare *McInnis v. State,* 618 S.W.2d 389 (Tex.Civ. App.—Beaumont 1981, writ ref'd n.r.e.), *cert. denied* 456 U.S. 976, 102 S.Ct. 2242, 72 L.Ed.2d 851 (1982), where a different result was reached.

Cosden's second case, *Trans-Cold Express, Inc. v. Arrow Motor Transit, Inc.,* 440 F.2d 1216 (7th Cir.1971), involves a statement (1) which had been secured by deception and (2) which was not disclosed in compliance with a pre-trial order. The third case, *Cataphote Corporation v. Hudson,* 422 F.2d 1290 (5th Cir.1970), dealt with trade secrets which were furnished to expert witnesses in violation of an order of the court.

Defendants did not violate a court order in this case, nor did they trespass upon a person's homestead. Their expert examined tangible physical evidence which had been left at the courthouse following Defendants' acquittal of criminal charges in a related case. The deputy sheriff made the exhibit available to Defendants' expert and watched while it was examined and photographed. Cosden could have taken its meter when the criminal proceedings were completed. If that had been done, Defendants would have had no alternative other than proceeding under Rule 167. Since the meter had been left at the courthouse, Defendants did not engage in "chicanery and improper investigative conduct" by having it examined.

Even if the expert's knowledge of the inside of the meter was improperly acquired, which we expressly decline to find, it would nonetheless be admissible in this civil lawsuit.

Even before the Rules of Civil Procedure were adopted, *Allison v. American Surety Co.,* 248 S.W. 829 at 832 (Tex.Civ.App.— Galveston 1923, no writ), stated:

> The courts do not concern themselves with the method by which a party to a civil suit secures evidence pertinent and material to the issues involved, and which he adduces in support of his contention, and hence evidence which is otherwise admissible may not be excluded because it has been illegally and wrongfully obtained.

See also *United States v. Janis,* 428 U.S. 433 at 447, 96 S.Ct. 3021 at 3028–3029, 49 L.Ed.2d 1046 (1976); Annotation, "Admissibility in Civil Case of Evidence Obtained by

Unlawful Search and Seizure," 5 A.L.R.3d 670 (1966).

■ The newly enacted Texas Rules of Evidence became effective September 1, 1983. Dean Blakely's Commentary on Article IV, TEXAS RULES OF EVIDENCE HANDBOOK (Houston L.Rev.1983) states at p. 162:

> Texas Rules of Evidence 401 and 402 codify the practice of the common law in Texas. They do not seek to change Texas law, but to clarify it, and to express it in a concise, uniform way for application in all civil proceedings in Texas state courts.

Since Rule 402 is said to have made no change in Texas law, we look to the specific language approved by our Supreme Court:

> All relevant evidence is admissible, except as otherwise provided by Constitution, by statute, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is inadmissible.

We hold that Defendants' expert testimony as to the condition of the inside of the meter was material evidence (It had a rational relationship to the disputed fact issue as to whether the meter was accurate), and we also hold that this evidence was relevant (It had probative value tending to establish the disputed fact that the meter was not accurate). Consequently, it was admissible because Cosden has not shown that this relevant evidence must be excluded under either the federal or state Constitution, the federal or state statutes, or by any rules adopted by the Supreme Court.

A careful review of the entire record convinces this court that the improper exclusion of this relevant evidence is not "harmless error" under TEX.R.CIV.P. 434. During the presentation of its case Cosden placed great reliance on its meter as showing that defendants were conspiring to cause Cosden to pay for oil which was not delivered. The fact that the meter showed the delivery of only two-tenths of a barrel while the run tickets showed a claim for the delivery of about 1200 barrels of oil was the most convincing proof of defendants'

wrongdoing. If the meter was broken, as defendants' expert believed, the exclusion of this testimony was reasonably calculated to cause and probably did cause the rendition of an improper judgment under TEX. R.CIV.P. 434. Cosden's witnesses testified that the meter had been tested, was accurate, and had not been materially altered from the time it was removed from defendants' flow line until the trial of this case. After the trial court erroneously instructed the jury to disregard any testimony as to the inside of the meter, the expert's opinion (that the meter would not give a true reading) was not persuasive; however, that opinion with photographic proof that the inside of the meter was missing a pin which was essential to its accuracy would have been most persuasive, especially since the deputy sheriff testified that the expert did not make any material alteration to the meter. The trial court did not allow the jury to consider any proof as to the inside of the meter. This was not cumulative testimony. See *Commercial Standard Insurance Co. v. Robinson,* 137 Tex. 184, 151 S.W.2d 795 at 796 (1941, opinion adopted):

> The theory upon which expert testimony is admitted requires that the expert be permitted to state the reasons or grounds upon which his opinion is based.

See also *Reed v. Barlow,* 157 S.W.2d 933 (Tex.Civ.App.—San Antonio 1941, writ ref'd). Moreover, it dealt with the rebuttal of the most convincing portion of Cosden's case. Defendants denied under oath any wrongdoing, and they had explanations for all of the circumstantial evidence which indicated wrongdoing.

The judgment of the trial court is reversed, and the cause is remanded.