**David and Denise SCHENCK, Ebby Halliday Real Estate, Inc., and Mary Taylor, Appellants,**

v.

**EBBY HALLIDAY REAL ESTATE, INC., Mary Taylor, David and Denise Schenck, and B.E. and Neita Horton, Appellees.**

No. 2–89–170–CV.

Court of Appeals of Texas, Fort Worth.

Dec. 12, 1990.

Rehearing overruled Feb. 12, 1991.

Richard C. Guinan, Jr. and Mark Frels, Denton & Guinan, Dallas, for appellants David and Denise Schenck.

J. Kent Newsom, Newsom, Terry & Newsom, Dallas, for appellants Ebby Halliday and Mary Taylor.

L. Kent Clay and Jonathan T. Suder, Kelly, Hart & Hallman, Fort Worth, for appellees.

Before WEAVER, C.J., and HILL and MEYERS, JJ.

## OPINION

MEYERS, Justice.

This is an appeal from a judgment rendered against the buyers, sellers, and brokers in a lawsuit which arose out of a sale of real property. Appellants David and Denise Schenck ("Schencks") are appealing the $45,305 in damages which was awarded to them and for which appellees B.E. and Neita Horton ("Hortons"), Mary Taylor and Ebby Halliday Real Estate ("Brokers"), were held jointly and severally liable. The first four points of error argue that, based upon the jury's findings, they should have been awarded rescission as they requested. Alternatively, in their fifth point of error, appellants, the Schencks, claim that there was no evidence or insufficient evidence to support an award of $45,305 when the only evidence submitted conclusively established their damages as being $125,000. Finally, the Schencks argue that the trial court erred when it refused to offset the $122,917.20 judgment awarded to the Hortons by the $45,305 judgment awarded to the Schencks for the purposes of calculating the pre- and post-judgment interest awarded to the Hortons on their judgment.

The Hortons cross-appealed, raising five cross-points of error. The Hortons argue in their first cross-point of error that the trial court erred in awarding them only $10,000 in attorneys' fees based upon the jury's answer to Special Question No. 18 because this finding was against the great weight and preponderance of the evidence. Secondly, the Hortons complain that the trial court erred in sustaining the Schencks' objection to the admission into evidence of the Horton's exhibits numbers 24, 25, and 26, because these exhibits were relevant, admissible, and established as a matter of law the amount of attorney's fees the Hortons are entitled to recover. The trial court's denial of the Hortons' motion for a judgment notwithstanding the verdict as to Special Questions Nos. 3 and 7 is complained of by the Hortons in their third and fourth cross-points of error. In their fifth cross-point of error, the Hortons state that the trial court erred in not submitting, in the jury charge, the Hortons' special questions regarding the Schencks' liability for damages under § 17.555 of the Deceptive Trade Practices Act ("D.T.P.A.") which allows for contribution and indemnity between liable parties.

The Brokers are appealing from the $45,305 judgment in favor of the Schencks for which they were held jointly and severally liable. They raise the following three points of error: (1) the trial court erred in excluding the testimony of expert witness Don Hall regarding the diminished value of the property due to the existence of the flood plain; (2) the trial court erred in awarding the Schencks relief under the D.T.P.A. because the Schencks failed to prove they had given the Brokers notice of their claim prior to filing suit as required by Article 17.505 of the Texas Business and Commerce Code; and (3) the trial court erred in refusing to submit, in the jury's charge, the Brokers' requested special jury question regarding the Schencks' liability for damages under Article 17.555 of the Texas Business and Commerce Code which permits contribution and indemnity between liable parties. In response to the appeal brought by the Schencks, the Brokers counter that the trial court did not err in denying the Schencks' request to disregard the jury's finding in relation to Special Question No. 11 because there is sufficient evidence in the record to support the jury's response to this question.

We affirm.

In August of 1985, the Schencks entered a contract with the Hortons to purchase a tract of real property located in Arlington, Tarrant County, Texas, for $195,000. Pursuant to this contract, on August 29, 1985, the Schencks paid the Hortons $50,000 in cash and executed a real estate lien note in the amount of $145,000. In return for this, the Hortons conveyed the property to the Schencks by warranty deed. The Schencks also executed a deed of trust granting the Hortons a purchase money lien against the property.

At trial, the jury found that the property was located within the boundaries of a 100-year flood plain and was subject to significant flooding. Halliday and Taylor co-brokered the sale of the property with Anne Hurley, an employee of Coldwell Banker. Under the terms of the contract Taylor, together with Halliday, was to receive a commission of 3% of the sale price and as was Hurley together with Coldwell Banker.

David Schenck and B.E. Horton had a conversation while standing on the property during which Schenck asked Horton if he had ever had any problems with flooding. Horton replied that he had never seen it flood. Schenck is uncertain if this conversation occurred before or after he signed the contract to purchase the property.

At trial, the Schencks presented the expert testimony of David C. Hughes, Jr., a certified engineer. Hughes testified that from the data he was provided, he determined that a 200–foot portion of the property purchased by the Schencks was located within the 100–year floodplain and floodway. Rene J. Olivier, a real estate appraiser, testified that the presence of the floodway on the property depreciated the value of the property to $70,000.

Paragraph 19 of the contract, which the Schencks signed when they agreed to purchase the land, provided that if the Schencks were to ascertain that the property is located within a 100–year floodplain and notify the Hortons within 15 days of the date of the contract, the Schencks could terminate the contract. However, it was not until after the Schencks decided to sell this property in June 1986 that they examined the property and discovered the property's location within the floodplain.

On December 31, 1986, the Schencks filed suit against the Hortons, Ann Hurley, Mary Taylor, Dunaway Associates/Surveying, Ebby Halliday Real Estate, Inc., and Coldwell Banker Residential Real Estate. The causes of action alleged included negligence, breach of contract, common-law fraud, fraud in the sale of real estate under § 27.01, TEX.BUS. & COM.CODE ANN. (Vernon 1987) and deceptive trade practices under TEX.BUS. & COM.CODE ANN. § 17.45 (Vernon 1987). The Schencks contend that the Hortons refused the offer to reconvey the property to them prior to filing suit. The Hortons claim that prior to the filing of the Schencks' third amended original petition, the Schencks did not request rescission. The first mention of re-

scission in the transcript of this case is in the Schencks' third amended original petition.

In response to the lawsuit, the Hortons brought a counterclaim for payment under the note the Schencks signed in partial payment to the Hortons for the property. Prior to trial, Coldwell Banker, Coldwell Banker Brokerage, Hurley, Dunaway, and Ticor were non-suited based on the Schencks' motion to non-suit these parties.

After the close of evidence at the trial of this case, the jury returned a verdict assessing liability against all the parties. Based on the verdict, the Schencks attempted to elect as a remedy the rescission of their contract to purchase the property and the return of the consideration they paid. The Hortons objected to this election and urged the trial court under several bases that the Schencks were not entitled to rescission. After several hearings, the trial court denied the Schencks' request for rescission and entered a judgment based on the jury verdict. The Hortons were to recover from the Schencks $122,917.20 in payment of the note along with prejudgment interest in the amount of $5,789.58 and continuing thereafter at the rate of $63.47 per day until the date of judgment. The Schencks were also to pay the Hortons $10,000 in attorneys' fees. The sum of $45,305 was awarded to the Schencks. The Hortons, Mary Taylor, and Ebby Halliday were held jointly and severally liable for this amount together with prejudgment interest in the amount of $8,266.65 and continuing thereafter at the rate of $7.45 per day until the date of judgment. The Schencks were also awarded $36,400 in attorneys' fees and $4,000 in expenses under § 27.01 of the TEX.BUS. & COM.CODE, to be paid by the Hortons. Ebby Halliday and Mary Taylor were ordered to pay $18,200 in attorneys' fees to the Schencks.

We shall address jointly the Schencks' first four points of error which state that the trial court erred in refusing to enter judgment granting the Schencks the relief of rescission for the four following reasons: (1) the court was obligated to enter a judgment in favor of the Schencks for the greatest relief which could be afforded to them; (2) the Schencks are entitled to elect to receive such relief based upon the affirmative finding of fraud by the jury; (3) the Schencks are entitled to elect to receive such relief based upon the affirmative finding by the jury of violations of the Texas Deceptive Trade Practices Act; and (4) the Schencks are entitled to elect to receive such relief based upon the affirmative finding by the jury of a breach of the express warranty that the property was suitable for construction of the Schencks' residence.

The decision whether to grant rescission lies within the sound discretion of the trial court. *Ebberts v. Carpenter Prod. Co.*, 256 S.W.2d 601, 627 (Tex.Civ. App.—Beaumont 1953, writ ref'd n.r.e.). Rescission is an optional form of relief available to a consumer under the express provisions of the Texas Deceptive Trade Practices Act. Section 17.50(b)(3) of the D.T.P.A. reads as follows:

> (b) In a suit filed under this section, each consumer who prevails may obtain:
>
> . . . .
>
> (3) orders necessary to restore to any party to the suit any money or property, real or personal, which may have been acquired in violation of this subchapter; and

TEX.BUS. & COM.CODE ANN. § 17.50(b)(3) (Vernon Supp.1990). However, this remedy under D.T.P.A. is a statutory recognition of the equitable remedy of rescission. *Smith v. Kinslow*, 598 S.W.2d 910, 915 (Tex.Civ.App.—Dallas 1980, no writ). It is well settled that a party seeking equity cannot come into a court with unclean hands. *Village Medical Center, Ltd. v. Apolzon*, 619 S.W.2d 188, 191 (Tex. Civ.App.—Houston [1st Dist.] 1981, no writ).

The jury found negligence on the part of the Schencks in this transaction. The contract signed by the Schencks clearly stated that they had 15 days to find out if the property was within a 100–year floodplain and rescind, otherwise the property would be deemed acceptable. It was more than a year later that the Schencks

allegedly attempted to rescind this transaction. Their wish to rescind this real estate transaction arose after they located other property they considered to be a more desirable location for their residence and they no longer wanted this property. The Schencks argue that their unclean hands cannot prevent them from electing the equitable remedy of rescission. In support of their position they point to this court's holding in *Roy E. Thomas Const. Co. v. Arbs*, 692 S.W.2d 926, 932 (Tex.App.—Fort Worth 1985), *writ ref'd n.r.e.*, 700 S.W.2d 919. It is true that common-law defenses cannot be used to defeat claims under D.T. P.A. *Id.* However, in this instance we are addressing the availability of a remedy. The Schencks' D.T.P.A. claim has succeeded and we must now determine the relief to which the Schencks are entitled. We find the Schencks' unclean hands, as determined by the jury, to be a factor in affording the equitable remedy of rescission permitted under D.T.P.A.

All of the cases cited by the Schencks wherein D.T.P.A. plaintiffs were granted the remedy of rescission may be distinguished from the instant case by noting that none of those cases involved a plaintiff who was found to be negligent or guilty of wrongful conduct. *See e.g. Consolidated Texas Fin. v. Shearer*, 739 S.W.2d 477 (Tex.App.—Fort Worth 1987, writ ref'd) (rescission where no showing of negligence on plaintiff's part); *Hunter v. Camp*, 246 S.W.2d 903 (Tex.Civ.App.—Waco 1952, no writ) (rescission allowed where no showing of negligence on plaintiff's part); *Boyter v. MCR Constr. Co.*, 673 S.W.2d 938 (Tex. App.—Dallas 1984, writ ref'd n.r.e.) (rescission allowed where no showing of negligence on the plaintiff's part).

The Schencks cite *Birchfield v. Texarkana Memorial Hosp.*, 747 S.W.2d 361 (Tex.1987) and TEX.R.CIV.P. 301 to support their argument that the trial court's denial of their request for rescission was error because the court was obligated to enter judgment in favor of the Schencks for the greatest relief that could be afforded to them. As noted in *Birchfield,* the first sentence of rule 301 of the Texas Rules of Civil Procedure reads as follows:

> The judgment of the court shall conform to the pleadings, the nature of the case proved and the verdict, if any, and shall be so framed as to give the party all the relief to which he may be *entitled* either in law or equity.

TEX.R.CIV.P. 301 (emphasis added); *see also Birchfield*, 747 S.W.2d at 367 (emphasis added). We note the importance of the word "entitled" in the above-stated rule. The jury determined that the Schencks were "entitled" to the $45,305 in damages and attorneys' fees. Thus, the trial court properly observed Rule 301 when it awarded these damages to the Schencks and denied their request for rescission of this transaction.

We find that the trial court's decision to deny the Schencks' request for rescission was proper. Accordingly, the Schencks first four points of error are overruled.

The Schencks' fifth point of error argues that the trial court erred in entering judgment in favor of the Schencks for only $45,305 based upon the jury's answer to Special Question No. 11 because there is no evidence or, alternatively, insufficient evidence to support this award. The Schencks contend that the only evidence submitted at trial conclusively established their entitlement to $125,000 in actual damages.

In determining a "no evidence" point, we are to consider only the evidence and inferences which tend to support the finding of the jury and disregard all evidence and inferences to the contrary. *See Sherman v. First Nat'l Bank*, 760 S.W.2d 240, 241 (Tex.1988) (per curiam); *Larson v. Cook Consultants, Inc.*, 690 S.W.2d 567, 568 (Tex.1985) (per curiam). If there is any evidence of probative force to support the finding of the jury, the point must be overruled and the finding upheld. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (Tex.1951).

A "no evidence" point of error must and may only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only

evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *Commonwealth Lloyd's Ins. Co. v. Thomas*, 678 S.W.2d 278, 288 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEXAS L.REV. 361 (1960).

An assertion that the evidence is "insufficient" to support a finding of fact can mean that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the finding should be set aside and a new trial ordered. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). We are required to consider all of the evidence in the case in making this determination. *See id.*

Considering all the evidence, we see that contrary to the Schencks' assertion, the Hortons provided evidence regarding damages. While the Schencks' expert engineer witness, David Hughes, testified that two-thirds of the property was in the 100–year flood plain, the Hortons' witness, David Corley, testified by oral deposition that approximately one-third of the property was in the flood plain. Furthermore, Hughes testified that one can build within a flood plain up to the limits of the floodway. The flood plain, according to Hughes, comprised a considerable portion of the property.

The testimony given by the Schencks' real estate expert, Rene Olivier, was based solely on the flood plain designation made by Hughes. Olivier admitted that if the flood plain was less than he assumed it to be, then the value of the property would be greater. Thus the jury was presented with evidence from which they could conclude only one-third of the Schencks' property is within the flood plain.

We find that there was evidence to support the jury's response to Special Question No. 11 and that evidence was sufficient. Therefore, the trial court did not err in denying the Schencks' request to disregard the jury's answer under Special Question

No. 11 and the Schencks' fifth point of error is overruled.

The sixth point of error urged by the Schencks is that the trial court erred in refusing to reduce the amount awarded to the Hortons by the amount awarded to the Schencks for the purposes of calculating post-judgment interest.

Article 5069–1.05 of the Texas Revised Civil Statutes sets out the manner in which the interest rates on judgments are to be calculated. Section 3(b) of this article provides that "each judgment shall state a rate of interest to be earned on that judgment." TEX.REV.CIV.STAT.ANN. art. 5069–1.05 (Vernon 1990). In the instant case we have a D.T.P.A. claim resulting in one judgment and another claim for payment on a promissory note resulting in another judgment. The Hortons' claim was based on a written instrument which specifically set forth the amount due and the interest rate to be used in calculating this judgment. We therefore find that the trial court acted properly in calculating these separate judgments for the purposes of post-judgment interest in accord with Article 5069–1.05 of Texas Revised Civil Statutes and the Schencks' sixth point of error is overruled.

The Hortons complain in their first cross-point of error that the trial court erred when it awarded the Hortons $10,000 in attorney's fees based on the jury's answer to Special Question No. 18 because this finding was against the great weight and preponderance of the evidence.

In reviewing a point of error asserting that a finding is "against the great weight and preponderance" of the evidence, we must consider and weigh all of the evidence, both the evidence which tends to prove the existence of a vital fact as well as evidence which tends to disprove its existence. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) (per curiam); *Ford Motor Co. v. Nowak*, 638 S.W.2d 582, 585 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.). So considering the evidence, if a jury finding is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, the point should

be sustained, regardless of whether there is some evidence to support it. *Watson v. Prewitt*, 159 Tex. 305, 320 S.W.2d 815, 816 (1959) (per curiam); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951) (per curiam).

■ In answer to Special Question No. 18, the jury awarded the Hortons $10,000 for attorney's fees incurred in bringing their counterclaim on the real estate lien note and $38,000 for attorneys' fees incurred in their defense against the Schencks' D.T.P.A. claims.

In support of their claims for attorneys' fees, the Hortons elicited the testimony of one of their counsel, Kent Clay. Clay testified that the Hortons incurred $56,400 in attorney's fees. According to Clay, 40% of this amount was allocated to the D.T.P.A. claim and 15% was allocated to the bad faith D.T.P.A. counterclaim. Clay then testified, in apparent contradiction to his preceding statement, that $46,900 was spent in relation to the claim on the note and included the time spent on the negligence, breach of warranty, and other claims in this figure. The jury was properly instructed to separate the attorneys' fees for each of these claims and the Hortons did not object to this instruction.

We find that based upon the allocation of the Hortons' attorneys' fees as made by Clay and the court's instruction to the jury, the attorneys' fees awarded to the Hortons on each of these claims was not against the great weight and preponderance of the evidence. Accordingly, the Hortons' first cross-point of error is overruled.

■ The second cross-point of error urged by the Hortons is that the trial court erred in sustaining the Schencks' objection to the admission into evidence of the Hortons' exhibits numbers twenty-four, twenty-five, and twenty-six, because they were relevant, admissible, and established as a matter of law the amount of attorneys' fees the Hortons are entitled to recover. The exhibits consisted of charts which were prepared by the Hortons' witness, Kent Clay. They were designed as an aide to summarize Clay's testimony. The admission of charts or diagrams which are de-

signed to summarize or emphasize a witness's testimony is a matter which lies within the sound discretion of the trial court. *Champlin Oil & Refining Co. v. Chastain*, 403 S.W.2d 376, 389 (Tex.1965). Since these charts did not contain any additional evidence apart from that provided by Kent Clay, we find that the trial court's decision to exclude them was not an abuse of its discretion and caused the Hortons no harm. The Hortons' second cross-point of error is overruled.

■ The trial court's denial of the Hortons' motion for judgment notwithstanding the verdict as to Special Question No. 3 (wherein the jury found the Hortons committed fraud) is complained of by the Hortons in their third cross-point of error. The Hortons argue that there is no evidence or insufficient evidence to support such a finding. The Hortons' fourth cross-point of error asserts that the trial court erred in denying their motion for a judgment notwithstanding the verdict as to Special Question No. 7, wherein the jury found that the Hortons had committed breach of warranty, because there is no or insufficient evidence to support such a finding. These two points shall be addressed together.

As explained above, when examining an argument that no evidence existed to support a jury's finding, we must examine only the evidence and inferences tending to support the jury's finding. *Sherman*, 760 S.W.2d at 241. However, when addressing an argument that evidence is insufficient to support a finding of fact we are required to consider all the evidence in this case. *Garza*, 395 S.W.2d at 823.

The Hortons contend that there was no evidence in the record contradicting B.E. Horton's statement that he had never seen his property flood. Examining the record, we found testimony from Richard Van Hoosier, a neighbor who had previously purchased property from the Hortons. Van Hoosier testified that he had a conversation with B.E. Horton prior to the Schencks' purchase of this property wherein Van Hoosier and Horton discussed the

location of the property within a 100–year flood plain. Van Hoosier also testified regarding a conversation with Horton in early 1984 during which they discussed flooding from a "big rain" which caused erosion damage on the property because the creek had come out of its banks and flooded the property.

Van Hoosier went on to testify that his property has flooded approximately four or five times since 1984 and that during an incident in 1984, the creek flooded seventy-five feet onto his property with water being six or seven inches deep. B.E. Horton, himself, admitted that he had experienced flooding on his own property and in the neighborhood.

It was within the province of the jury to weigh this evidence. Based upon the above-described testimony of Van Hoosier and Horton there was clearly sufficient evidence to show that B.E. Horton knew the property was subject to flooding when he represented otherwise to the Schencks and thus to support the jury's finding of fraud.

■ The Hortons further contend that there was no evidence in the record to support a finding that the Schencks relied upon B.E. Horton's representations about the property. However, David Schenck testified at trial that he relied upon B.E. Horton's representations and that the knowledge that the property was located within a flood plain would have been material to his decision to purchase it.

■ The Hortons argue that the Schencks were not entitled to rely on B.E. Horton's representations because of the contract provision which allowed the Schencks fifteen days to terminate the contract if they found that the property was within the flood plain. However, a vendor's affirmative misrepresentations concerning the condition of property are actionable, even if the purchaser fails to exercise a right of inspection, especially when the failure to exercise such right was based upon the fraudulent misrepresentations of the vendor. *Weitzel v. Barnes*, 691 S.W.2d 598, 601 (Tex.1985). Thus the trial court's refusal to disregard the jury's finding of fraud in response to Special Question No. 3 was proper and the Horton's third cross-point of error is overruled.

■ The Hortons attack the jury's finding of breach of warranty on the basis that the Schencks never built a house on the property. However, the record clearly shows that the Schencks intended to build a house on the property. They were damaged by the decrease in resale value of the property that occurred upon their discovery that the property was located within a flood plain. Accordingly, we find that there was evidence which was sufficient to support the jury's finding of breach of express warranty and the Hortons' fourth cross-point of error is overruled.

In their fifth cross-point of error, the Hortons argue that the trial court erred in failing to submit to the jury in the charge of the court the Hortons' requested special questions inquiring as to the Schencks' own liability for damages pursuant to § 17.555 of the D.T.P.A., which allows for contribution and indemnity between liable parties. This point is also asserted by brokers Ebby Halliday and Mary Taylor as their third point of error.

The Hortons asserted as a counterclaim that the Schencks' own conduct was a producing cause of their damages and that the Hortons are entitled to contribution and indemnity from them pursuant to § 17.555 of the D.T.P.A. The trial court submitted a comparative causation issue to the jury on the theory of negligence and the jury found that the Schencks were, together, 33% responsible for their damages by reason of their own negligence. The trial court refused, however, to submit the same issue on the theory of D.T.P.A. contribution and indemnity.

■ The judgment in the present case was based upon the jury's findings of fraud and violations of the D.T.P.A. The law relating to comparative responsibility does not apply to limit the Schencks' recovery under these causes of action. Specifically, § 33.002 of the Texas Civil Practice and Remedies Code regarding comparative

responsibility provides in pertinent part as follows:

(a) This chapter *does not apply to a claim based on an intentional tort* or a claim for exemplary damages included in an action to which this chapter otherwise applies.

(b) *This chapter does not apply to*

. . . .

(2) *an action brought under the Deceptive Trade Practices–Consumer Protection Act (Subchapter E, Chapter 17, Business & Commerce Code) except as specifically provided in Section 17.50 of that Act;* . . .

TEX.CIV.PRAC. & REM.CODE ANN. § 33.002(a) and (b) (Vernon Supp.1990) (emphasis added) (footnote omitted).

The Texas Legislature recently amended § 17.50 of the D.T.P.A. effective September 1, 1989, and provided that the provisions relating to comparative responsibility contained in § 33 of the Texas Civil Practice and Remedies Code only govern the determination of the amount of damages recovered in an action seeking damages for the following:

(i) [D]eath; (ii) personal injury other than mental anguish or distress associated with violation of this subchapter that does not involve death or bodily injury; or (iii) *damage to property other than the goods acquired by the purchase or lease that is involved in the consumer's action or claim if that damage arises out of the occurence that involves death or bodily injury;* . . .

TEX.BUS. & COM.CODE ANN. § 17.50(b)(1)(A) (Vernon Supp.1990).

Since the damages awarded to the Schencks in the present case relate solely to property which was "acquired by purchase" from the Hortons and do not involve an occurrence of "death or bodily injury," the comparative responsibility statute does not apply. Although the amended provisions of § 17.50(b)(1)(A) and (B) were not effective until September 1, 1989, the inclusion of the provisions relating to comparative responsibility in § 17.50 rather than in § 17.555 provides clear evidence that the legislature did not intend the indemnity and contribution provisions contained in § 17.555 to apply to limit a recovery of damages awarded to a consumer under § 17.50 of the D.T.P.A.

Accordingly, we find that the trial court did not err when it refused to submit to the jury the Hortons' and the Brokers' special questions concerning the Schencks' liability for damages pursuant to § 17.555 of D.T.P.A. The Hortons' fifth cross-point of error and the Brokers' third point of error are overruled.

Ebby Halliday and Mary Taylor, the Brokers, also appeal from the judgment in this case raising two other points of error, the first of which complains that the trial court erred by excluding the testimony of Don Hall, an expert witness, called by the Brokers to testify concerning the diminished value of the property caused by the existence of the flood plain. The Brokers offered the testimony of Hall, a real estate appraiser, in rebuttal to the testimony of Olivier offered by the Schencks as to damages.

During the course of Hall's testimony, his appraisal report was marked as Defendant Taylor's Exhibit No. 3 to be offered into evidence at trial. The Schencks' counsel objected to the admission of Hall's report on the ground that the Brokers failed to produce the report in response to a proper discovery request, thereby preventing the Schencks from reviewing the report prior to trial. The trial court sustained the Schencks' objection and excluded Hall's appraisal report from the evidence presented at trial.

Hall continued to testify. Upon further examination, Hall disclosed that he had actually trespassed upon appellees' property in order to make his appraisal. The Schencks then objected to the entire testimony of Don Hall based upon the Brokers' failure to follow the proper procedure for gaining entry upon another's property to perform an inspection under rules 166b(2)(c) and 167 of the Texas Rules of Civil Procedure (Vernon Supp.1990). The trial court sustained the Schencks' second objection and struck Hall's testimony in its entirety, including his preceding testimony.

The Brokers contend that by sustaining the Schencks' subsequent objection and motion to strike Hall's testimony, the trial court erred in "applying the exclusionary rule of evidence to civil proceedings, *i.e.* improperly obtained evidence will be excluded." They rely on a line of cases which generally hold that the exclusionary rule, being a rule of criminal evidence, does not apply to civil trial proceedings. *See Baxter v. Texas Dept. of Human Resources,* 678 S.W.2d 265 (Tex.App.—Austin 1984, no writ).

The facts in the present case are similar to those in *Day and Zimmerman, Inc. v. Strickland,* 483 S.W.2d 541, 546 (Tex.Civ. App.—Texarkana 1972, writ ref'd n.r.e.) wherein the appellate court upheld the exclusion of the testimony of the defendant's expert witness, an architect who had trespassed upon the plaintiff's property to make an unauthorized inspection of the premises. The Court's decision rested on Rule 167 of the Texas Rules of Civil Procedure (now codified as Rules 166b(2)(c) and 167(1)(b)). Rule 166b(2)(c) states as follows:

A party may obtain a right of entry upon designated land or other property in the possession or control of a person upon whom a request or motion to produce is served when the designated land or other property is relevant to the subject matter in the action for the purposes of inspection and measuring, surveying, photographing, testing or operation thereon.

■ Under the holding in *Day & Zimmerman,* a party is not entitled to trespass upon another party's property to conduct an investigation or inspection without first notifying the other party by properly serving a request to produce or filing a motion to produce under Rules 166b(2)(c) and 167(1)(b). The court in *Day & Zimmerman* correctly held that the "law does not condone such an unauthorized inspection when the inspection in all probability could have been obtained through lawful means by making application to the court for an inspection order pursuant to Rule 167 of Tex.R.Civ.P." *Id.* at 547. Under the current version of Rule 167, appellants were not even required to seek a court order. Appellants could have gained a right of entry onto appellees' land by simply serving a request for production, but appellants failed to do so, apparently with the intent to surprise appellees' counsel by introducing an undisclosed expert report into evidence at trial.

Appellants' attempt to distinguish the court's holding in *Day & Zimmerman* by relying upon *Sims v. Cosden Oil & Chemical Co.,* 663 S.W.2d 70, 73 (Tex.App.—Eastland 1983, writ ref'd n.r.e.) wherein the Eastland Court of Appeals reversed a trial court's refusal to allow the appellant's expert witness to testify to matters relating to his investigation of a drop meter, a device used for measuring oil delivered to storage tanks. The present case is completely distinguished from *Sims* because the party obtaining discovery in *Sims* did not commit a trespass upon the other party's property in order to investigate the drop meter and because the property was not in the possession of the opposing party when the inspection occurred. *Id.* at 72–73. Further, since the investigation in *Sims* concerned personal property and did not "extend to destruction or material alteration" of the property, the discovering party was not required to proceed with a proper discovery request pursuant to Rule 167 (now codified as Rule 167(1)(g)).

We recognize the validity of the general proposition that the exclusionary rule does not apply to civil trial proceedings. However, a cursory review of the record in the present case reveals that the exclusionary rule, as codified in Article 38.23 of the Texas Code of Criminal Procedure, had no bearing on the court's decision to exclude the testimony and appraisal report of Hall. Hall's testimony was excluded solely as a sanction for abuse of civil discovery and case authority relating to the exclusionary rules is not controlling.

■ The trial court properly excluded the report of Don Hall and his testimony regarding the value of the property under Rule 215(3) of the Texas Rules of Civil Procedure as a sanction for abuse of discovery. By incorporating the sanctions

available under Rule 215(2)(b), Rule 215(3) authorizes the trial court to prohibit a party "from introducing designated matters in evidence." Further, it is well established under the controlling case law that a trial court is authorized to exclude evidence as a discovery sanction. *Town East Ford Sales, Inc. v. Gray*, 730 S.W.2d 796, 809 (Tex.App.—Dallas 1987, no writ). The decision to impose sanctions for an abuse of discovery should not be disturbed absent an abuse of discretion. *Wilson v. Snead Site Preparation, Inc.*, 770 S.W.2d 840 (Tex.App.—Houston [14th Dist.] 1989, writ dism'd).

We find that the trial court did not abuse its discretion in excluding Hall's testimony and overrule the Brokers' first point of error.

The second point of error raised by the Brokers states that the trial court erred in entering judgment against the Hortons and the Brokers and awarding the Schencks relief under D.T.P.A. because the Schencks failed to prove that they gave these parties notice of the claim prior to filing the suit as required by article 17.505 of the Texas Business and Commerce Code.

The Brokers state that it is clearly established under Texas law that the burden of proof relating to proper notice under the D.T.P.A. is on the Schencks. The Brokers' reliance upon the recent Supreme Court decision of *Cielo Dorado Dev., Inc. v. Certainteed Corp.*, 744 S.W.2d 10 (Tex.1988), is misplaced because Justice Kilgarlin, in his majority opinion, falls far short of resolving the issue of which litigant has the burden of proof on the notice issue when he states, *"Even if we assume arguendo* that notice under DTPA § 17.50A was an element of Cielo Dorado's case, Cielo Dorado's attorney testified without objection that notice was given pursuant to the DTPA." *Id.* at 11 (emphasis added).

Further, the Brokers assume in their brief that the notice provision in effect at the time of trial, rather than that which is in effect when the notice was sent, controls the disposition of this case. The Schencks sent the notice letter to the Brokers in January of 1987. Section 17.505 of the D.T.P.A. which amended and replaced the former notice provision at § 17.50A was not effective until September 1, 1987, more than 9 months after the Schencks' notice was sent and two years after their cause of action accrued. The D.T.P.A. notice provision which was in effect at the time the cause of action accrued is the provision which governs the sufficiency of notice. *Wolfe Masonry, Inc. v. Stewart*, 664 S.W.2d 102, 103 (Tex.App.—Corpus Christi 1983, no writ).

The portion of § 17.50A in effect when this cause of action accrued provided as follows:

> In an action brought under Section 17.50 of this subchapter, *actual damages only* and attorney's fees reasonable in relation to the amount of work expended and court costs may be awarded where the Defendant:
>
> . . . .
>
> (2) proves that he had no written notice of the consumer's complaint before suit was filed, ...

TEX.BUS. & COM.CODE ANN. § 17.505 (Vernon 1987) (emphasis added).

Under the express language of § 17.505, a consumer is only prohibited from recovering treble or punitive damages, but is entitled to recover actual damages plus attorney's fees if the "Defendant.... proves" that proper notice was not given. *Jim Walter Homes, Inc. v. Geffert*, 614 S.W.2d 843, 845 (Tex.Civ.App. —Corpus Christi 1981, writ ref'd n.r.e.). In the present case, treble or punitive damages were not awarded to the Schencks, and the failure to provide notice under § 17.50A does not limit the Schencks' right to recover the damages awarded in this case. Further, although it is currently unclear which party has the burden of proof on the notice issue under § 17.505, it is clearly established that the Brokers had the burden of proof on the issue of lack of notice under § 17.505. *Chrysler–Plymouth City, Inc. v. Guerrero*, 620 S.W.2d 700 (Tex.Civ.App.—San Antonio 1981, no writ). Appellants, the Brokers, presented no evidence at trial to sustain their burden of proof in the present case.

Therefore, we do not find that the trial court was prevented from entering a D.T. P.A. judgment against the Brokers because of the Schencks' alleged failure to provide notice. The Brokers' second point of error is overruled.

The Brokers' third point of error being addressed and overruled above, we affirm.