**LOUISIANA & ARKANSAS RAILWAY COMPANY, Appellant,**

**v.**

**Randall Dean CAPPS, Appellee.**

**No. 9632.**

Court of Appeals of Texas, Texarkana.

Jan. 18, 1989.

Rehearing Denied Feb. 14 and March 21, 1989.

Mike A. Hatchell, Ramey, Flock, Jeffus, Crawford, Harper, Tyler, William C. Gooding, Gooding & Dodson, Texarkana, for appellant.

Franklin Jones, Jr., Marshall, Harold W. Nix, Daingerfield, for appellee.

BLEIL, Justice.

Louisiana & Arkansas Railway Company appeals from a judgment in favor of Randall Capps, who had sued under the Federal Employers Liability Act for damages resulting from injuries he sustained while working for the Railway. The Railway complains that the trial court erred in failing to instruct the jury on how to reduce damages to their present value and in allowing improper jury argument. It further contends that the trial court erred in refusing to grant a remittitur. We conclude that the trial court committed no error with respect to conducting the trial, but that based on the evidence, its refusal to suggest a remittitur was error. We therefore indicate to Capps, through his attorney, that he may file a remittitur for the excess damages awarded for future physical pain and mental anguish. If the suggested remittitur is filed, we shall reform and affirm, otherwise the judgment will be reversed.

Capps worked for the Railway as a brakeman. His work required him to get on and off of moving railroad cars during switching operations in railroad yards between Dallas and Shreveport in order to couple and uncouple them from trains. He was injured on January 22, 1985, as he stepped off a car that was moving across a siding at about five to seven miles an hour. The asphalt surface around the track was normally kept clear of obstructions. On the night of his injury, Capps stepped onto a large rock, lost his balance, twisted his ankle and fell, severely injuring his right knee.

As a result of the injury, he underwent first arthroscopic and then reconstructive

surgery, followed by physical therapy, which continued until December 1985. The physical therapy did not completely rehabilitate Capps' knee and as of the time of the trial his knee continued to dislocate itself under normal use. His doctor told him that he had to give up railroading as a career and that his unstable knee was something that he would have to live with. At the time of the trial Capps was thirty-two years old, had obtained a high school general equivalency diploma, and had never worked at any job that was not physically demanding.

Capps testified that he suffers constant pain from his injury, but that he only uses aspirin as pain medication because he fears stronger drugs. He had engaged in a number of relatively strenuous activities as a part of his therapy and in his effort to continue to live a normal life. Capps had applied for work at over forty-five businesses and through the Texas Employment Commission, but had received no job offers. Several of the jobs which he sought were foreclosed to him because of his physical disability. He further testified that his wife had begun working in order to provide an income for the family, and that he was severely depressed because he was unable to contribute to his family's support.

The jury found for Capps on all issues. It found that the Railway failed to provide a safe place to work, that this failure caused his injuries, and that he was not negligent. It found damages as follows:

| | |
|---|---|
| Physical pain and mental anguish in the past | $ 40,000.00 |
| Lost earnings in the past | $ 91,000.00 |
| Physical pain and mental anguish in the future | $ 750,000.00 |
| Lost earning capacity in the future | $1,280,000.00 |
| Future medical expenses | $ 80,000.00 |

The trial court found that the jury's finding on future medical expenses was unsupported by the record and rendered judgment on that portion of the award for $35,000.00. The Railway does not question the sufficiency of the evidence to support the verdict except to claim that the damages for physical pain and mental anguish in the future are not adequately supported.

■ The Railway maintains that the trial court erred by failing to properly instruct the jury on the methods of converting total damages to a present value figure. Although the economist who testified on behalf of Capps concerning damages testified that the damage amounts he arrived at were reduced to present value, the Railway requested that the court give this instruction:

In determining the amount to be awarded for loss of earning capacity in the future, you are instructed to award the present value of the loss. To determine present value, you are to find the amount of the loss and then discount that amount by deducting therefrom annually an amount equal to the highest rate of interest at which such sum could be safely and securely invested during the period for which you may allow such damages.

The trial court did not give this instruction, but instructed the jury that all elements of damage for future loss should be reduced to their present value.

The trial court exercises broad discretion in the submission of instructions and definitions to the jury. *Mobil Chemical Company v. Bell,* 517 S.W.2d 245 (Tex.1974); *Wolters v. Wright,* 649 S.W.2d 649, 651 (Tex. App.–Texarkana 1982, writ ref'd n.r.e.); Tex.R.Civ.P. 277. The Railway shows no abuse of discretion in the trial court's instruction to the jury on reducing damages to their present value.

Additionally, the trial court's failure to give the requested instruction is not a ground for reversal of the judgment unless a substantially correct definition or instruction has been requested in writing and tendered by the party complaining of the judgment. Tex.R.Civ.P. 278. The instruction requested by the Railway was incomplete, and thus could not be considered substantially correct. Whatever method is used to calculate present value should take into account inflation as well as the rate of interest. *St. Louis Southwestern Railway*

*Company v. Dickerson,* 470 U.S. 409, 105 S.Ct. 1347, 84 L.Ed.2d 303 (1985). Thus, the requested instruction concerning present value is no more substantially correct than the one actually given, and thus the trial court did not err in instructing the jury concerning the reduction of damages to their present value.

We now turn to the Railway's multiple complaints about improper jury argument made to the jury by Capps' attorney. It assigns as error seven specific instances of improper jury argument and additionally maintains that the cumulative effect of the various improper arguments was calculated to cause the rendition of an improper judgment. Before turning to the specific arguments in this case, it is helpful to bear in mind some basic rules of argument.

■ Jury argument on the facts should be confined strictly to the evidence and the arguments of opposing counsel; personal criticism of opposing counsel shall be avoided; and side-bar remarks shall be avoided. Tex.R.Civ.P. 269(e), (f). When alleged improper jury argument takes place, a complainant must prove the following:

(1) an error (2) that was not invited or provoked, (3) that was preserved by the proper trial predicate, such as an objection, a motion to instruct, or a motion for mistrial, and (4) was not curable by an instruction, a prompt withdrawal of the statement, or a reprimand by the judge.... There are only rare instances of incurable harm from improper argument. The complainant has the further burden to prove (5) that the argument by its nature, degree and extent constituted reversibly harmful error. How long the argument continued, whether it was repeated or abandoned and whether there was cumulative error are proper inquiries. All of the evidence must be closely examined to determine (6) the argument's probable effect on a material finding. (7) Importantly, a reversal must come from an evaluation of the whole case, which begins with the voir dire and ends with the closing argument. The record may show that the cause is weak, strong, or very close. From all of these

factors, the complainant must show that the probability that the improper argument caused harm is greater than the probability that the verdict was grounded on the proper proceedings and evidence. *Standard Fire Ins. Co. v. Reese,* 584 S.W. 2d 835 (Tex.1979). During the final arguments in this case no objection occurred during Capps' opening argument or the Railway's argument. At no time during the argument did any of the attorneys interject side-bar remarks. All complaints at trial and on appeal concern Capps' concluding argument. We now consider the specific complaints seriatim.

■ Initially the Railway complains of argument which it says patently asks the jury to disregard the evidence and to decide the argument solely based on sympathy for Capps. Capps' attorney argued that:

This Railroad has got a lot to gain. If this Railroad can get you to do it, it will have maimed and crippled one of its employees.

. . . .

It will have maimed and crippled, Ladies and Gentlemen, one of its employees in violation of the Federal Employer's Liability Act, and gotten by with it.

As long as the argument has some evidentiary basis or may be reasonably inferred from the evidence and is free from inflammatory remarks, it is proper. *Fortenberry v. Fortenberry,* 582 S.W.2d 188 (Tex.Civ. App.–Beaumont 1979, writ ref'd n.r.e.). The Railway objected that Capps' attorney was indicating that it had committed an intentional act and that this was only a negligence case. The court overruled the objection. This argument came chiefly in reply to the Railway's argument to the jury to consider that, with regard to Capps' testimony, "he's asking for a lot of money, he's got a lot to gain out of this." And, we conclude that Capps' argument with respect to the Railway's having something to gain was proper response to the Railway's argument that Capps had something to gain; the argument that the Railway "maimed and crippled" one of its employees is reasonably based on the evidence showing that Capps was seriously injured

by the Railway's conduct in failing to provide a safe place to work. The Railway characterizes the argument that it committed intentional acts as charging it with criminal conduct. It cites *American Petrofina, Inc. v. PPG Industries, Inc.*, 679 S.W.2d 740 (Tex.App.–Fort Worth 1984, writ dism'd by agr.). Reliance on that case is misplaced in this instance in which the argument cannot fairly be construed to accuse the Railway of criminal conduct.

The next specific part of the rebuttal argument complained of is the following: "After they hurt Mr. Capps, after they knew that footing was bad...." The objection at trial to this argument was that it referred to some intentional action. The argument, in context, is more easily understood. Capps' attorney argued that:

After they hurt Mr. Capps—and he can't sit still while he hears me talk about this, Ladies and Gentlemen,—then they go out there and they clean this mess up, they clean it up and they have kept it clean ever since. They had it clean in September '85, it was clean in October of '87, and I dare say it's clean today, and it could have been clean on the 22nd January of 1985 had they exercised the degree of care the law puts on them. They elected not to do it, they reaped the consequences, permanently disabling one of their employees, and then they come in here before this jury and try to get them to say that this man is not telling the truth.

Now, is that reasonable? Is that fair? Is that the kind of conduct you think anybody ought to get away with in our court systems in this day and time?

I say it's not and I say to you that in answer to the first two issues in this case, as to whether or not the Railroad was negligent in failing to furnish a safe place to work and whether that was a cause, those answers should be "yes."

Again, we conclude that this is reasonably based on or inferred from the evidence.

The Railway now complains that Capps improperly argued that it "reaped the consequences, permanently disabling one of their employees, and then they come in here before this jury and try to get them to say that this man is not telling the truth." We conclude that this argument, too, is properly based on the evidence and is a reply to the Railway's closing argument. Furthermore, were it improper argument, the failure to object to this argument at trial waived any complaint about it. *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d at 840; *Turner v. Turner*, 385 S.W.2d 230 (Tex.1964).

▪ The next complaint by the Railway is that Capps improperly informed the jury of the effect of its answers. This concerns the conditional submission of the jury questions. The first question asked the jury to find whether the Railway failed to provide a safe place to work and the second question asked whether the failure to provide a safe place was a cause of Capps' injuries.

The Railway complains that the trial court erred in overruling its objection to the statement by Capps' attorney that if the jury answered either question one or two "no," then it need not answer the question on damages. It cites *McFaddin v. Hebert*, 118 Tex. 314, 15 S.W.2d 213, 217 (1929), for the proposition that:

[W]hen the issues are such that ordinary men are not presumed to know the legal effect of the answers, then the argument of counsel telling them the legal effect of such answers, coupled with the other circumstances, would, as a matter of law, probably result in injury to the opposite side, and is reversible error.

*McFaddin* is inapposite. Here the trial court instructed the jury not to answer further questions unless it answered one and two yes and under the court's charge the effect of the jury's answers to questions one and two would be clear to an ordinary juror.

Generally, a jury should not be informed of the legal effect of its answers. *Magic Chef, Inc. v. Sibley*, 546 S.W.2d 851 (Tex. Civ.App.–San Antonio 1977, writ ref'd n.r. e.). However, if this jury read the questions, it would discover precisely what counsel told them. If jurors through the exercise of ordinary intelligence can determine the effect of their answers to the

issues, the argument does not constitute reversible error because it does nothing more than tell the jury what they already know. *Zamora v. Romero*, 581 S.W.2d 742 (Tex.Civ.App.–Corpus Christi 1979, writ ref'd n.r.e.); *Green v. Hudson Engineering Corporation*, 305 S.W.2d 201 (Tex.Civ. App–Fort Worth 1957, writ ref'd n.r.e.); *Burrow v. Davis*, 226 S.W.2d 199 (Tex.Civ. App.–Amarillo 1949, writ ref'd n.r.e.). The rule which prohibits attorneys from informing the jury of the effect of their findings is designed to prevent an appeal to jurors to abandon their duty to answer the questions according to the evidence and to answer them so that a particular desired result will be reached. *See* 3 R. McDonald, *Texas Civil Practice in District and County Courts* § 13.11.1 (rev. 1983). The argument by Capps' attorney cannot reasonably be characterized as a plea to the jury to abandon its duty to answer the questions according to the evidence. Thus the trial court did not err in overruling the objection that the argument improperly told the jury the legal effect of its answers.

■ The Railway complains that Capps' attorney argued that the Capps family was on the "watershed of their lives." While it calls this argument "incurable," no particular complaint is made about this argument. Moreover, because no objection to this argument was made at trial, any complaint is waived. *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d at 840.

Two other specific parts of the argument, to which the trial court overruled objections, are that:

If you make a mistake today, it's a mistake the Capps' family will bear the rest of their lives. They are standing, if you will, on the "very plain of Armageddeon."

. . . .

Randy has got to have justice at the hands of this jury, Ladies and Gentlemen, otherwise he's relegated to the trash heap of our society. . . .

The crux of the Railway's contention is that this line of argument was an unadulterated plea for sympathy, not only for Capps, but also for his family. Argument is improper when it is designed to appeal to prejudice, contempt, hatred or resentment toward the opposing party, or to arouse sympathy for a party to the extent that a verdict is secured upon considerations outside the record. *See* 3 R. McDonald, *Texas Civil Practice in District and County Courts* § 13.09.1 (rev. 1983).

The evidence showed that the Railway failed to maintain a reasonably safe place for Capps to work and that this failure was a cause of his injuries, which were substantial. None of the jury's findings other than its finding of physical pain and mental anguish in the future, has been challenged as lacking sufficient evidentiary support. The closing argument on behalf of Capps was aggressive and it used hyperbole and metaphors—historically tools of oral advocacy. Final argument is designed to be persuasive in nature and so long as it is based upon the facts and issues raised by the evidence and not so inflammatory in nature as to influence the jurors to improperly render a verdict, the argument is not intrinsically improper. *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d at 838; *Ramirez v. Acker*, 134 Tex. 647, 138 S.W.2d 1054, 1055 (1940); *Houston Lighting & Power Co. v. Fisher*, 559 S.W.2d 682, 684 (Tex.Civ.App– Houston [14th Dist.] 1977, writ ref'd n.r.e.). From our review of the whole record, we conclude that the argument on behalf of Capps contained some evidentiary basis or could be reasonably inferred from the evidence, and is free from inflammatory remarks.

Additionally, if any of the arguments were improper, we conclude that the Railway has failed to show that the probability that an improper argument caused harm is greater than the probability that the verdict was grounded on the proper proceedings and evidence; this is not one of those rare instances of incurable harm from improper argument. *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d at 839. We determine that the argument by Capps' attorney was not improper or reversibly harmful.

■ The Railway also argues that the jury's award of $750,000.00 for future physical pain and mental anguish was ex-

cessive under the facts and that the trial court should have ordered a remittitur. The Railway correctly notes that under the terms of this question, the jury's finding was the present value of the future physical pain and mental anguish because that is what the charge required them to find. We examine this portion of the recovery under the presumption that the jury acted as instructed, and that the $750,000.00 award is the present value of a larger sum.

In our review of the request for remittitur, the proper standard is factual insufficiency. We thus examine all of the evidence in the record to determine whether sufficient evidence supports the damage award, remitting only if some portion is so factually insufficient or so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pope v. Moore*, 711 S.W.2d 622 (Tex.1986). We need not find passion, prejudice, or some other improper motive on the jury's part to order a remittitur. *Pope v. Moore*, 711 S.W.2d at 624.

The award for future physical pain and mental anguish finds some support by the testimony of Randall Capps, his wife and his physician. The question before this Court is whether the evidence is sufficient to support the jury's award of $750,000.00 in present value for future pain and mental anguish. It appears that, to a degree, his physical pain will continue for the remainder of his life. This evidence suggests that the award was proper and not excessive: Capps can no longer work on the railroad; he continues to have knee pain, and the knee occasionally becomes dislocated; he suffers depression, he has trouble sleeping, he cannot engage in physically strenuous recreational activities, and he no longer engages in many forms of strenuous physical labor; his family had to move to a smaller house; and his wife had to go back to work.

However, there are other factors which must be considered as well. Several of the situations suggested as causing mental anguish in the future, such as housing, income and employment shortfalls, have been rectified by the jury's award of present and future lost earnings. Thus, problems caused by a lack of monetary income will not exist and therefore cannot support an award based upon future mental anguish. Any mental anguish in the future must be caused by his inability to engage in strenuous recreational activities, work with the Railway, or do other heavy physical labor. Capps is also in some degree of physical pain, which will continue for the foreseeable future.

We do not determine whether the evidence is sufficient to support *any* recovery, but rather whether the evidence is factually sufficient to support this particular recovery. If the evidence is insufficient to support this recovery, we order a remittitur to provide for a level of recovery which is supported by the evidence. *Pope v. Moore*, 711 S.W.2d at 624; Tex.R.App.P. 85.

We have examined all of the evidence with care, and have outlined what we believe to be significant portions concerning future physical pain and mental anguish. There is no suggestion that Capps will be totally unable to work, that his mobility is impaired to any great degree, or that he will be unable to engage in many of the activities which are considered as providing a normal lifestyle. He has not suffered life-threatening injuries comparable to those of a person who has suffered severe burns, brain damage or spinal injuries. This impairment does not prevent his obtaining employment, functioning normally in a mental or physical context, or otherwise leading a normal life. His knee still functions, although imperfectly and painfully. There is no suggestion that his knee adversely affects any other part of his body. We find the evidence to be insufficient to support the amount awarded by the jury in the present case. We accordingly suggest a remittitur to $420,000.00, an amount which the evidence is sufficient to support.

Therefore, if within thirty days from the date of this opinion, Capps files in this Court a remittitur of $330,000.00, the judgment of the trial court will be reformed accordingly. Otherwise the cause will be reversed and remanded.

GRANT, Justice, concurring in part and dissenting in part.

I concur with the affirmance by the majority, but I dissent on the requirement of a remittitur.

There are no scales to convert physical pain and mental anguish to monetary amounts. There is no formula for finding the value that should be awarded for enduring physical pain and mental anguish. Because personal injury damages are unliquidated and not capable of measurement by any certain standard, the jury has large discretion in fixing the amount of the award. *Phillips Petroleum Company v. Burkett*, 337 S.W.2d 856 (Tex.Civ.App.–Fort Worth 1960, writ ref'd n.r.e.).

Although the jury award for future pain and suffering in the present case seems large, it shrinks considerably when considering that Capps was thirty-two years of age at the time of the trial and had a life expectancy of forty-one years. This brings the award to less than $20,000 for future pain and mental anguish. The evidence indicates that Capps' knee hurt constantly and that this pain was likely to continue for the rest of his life.

The evidence not only indicates that the nature of his injury is painful, but that it is also debilitating to the extent that he will never be able to engage in the type of physical activity that had played such an important part in his life. According to the evidence, Capps was a very physical person not only in his work, but in his leisure activities with his family. He enjoyed gardening, making home improvements, participating in active games with his children and working with horses and cows. The limitation on his ability to do these things would naturally result in mental anguish. The probability that he will have to have a complete artificial knee replacement in the future is another source of mental anguish.

The measure of damages for pain and suffering is a matter of opinion of the factfinder, and courts in most instances have been reluctant to disturb the findings of a court or jury on such matters where there is any evidence to support it. *George C. Vaughan & Sons v. Dyess*, 323 S.W.2d

261 (Tex.Civ.App.–Texarkana 1959, writ dism'd). The jury found that Capps should be compensated $18,293 a year for his future pain and mental anguish. The majority opinion would compensate him $10,244 a year for his future pain and mental anguish. I am not prepared to say that there was insufficient evidence for the jury to have made this award for future physical pain and mental anguish.