Lisa and Michael **HONEYCUTT**,
Appellants,

v.

**KMART CORPORATION, Appellee.**

No. 13–97–454–CV.

Court of Appeals of Texas,
Corpus Christi.

Aug. 12, 1999.

Rehearing Overruled Sept. 23, 1999.

William R. Edwards, III, John Blaise Gsanger, Edwards, Perry & Haas, Corpus Christi, for appellant.

Willie Ben Daw, III, Christopher A. Fusselman, Daw & Ray, Houston, for appellee.

Before Justices HINOJOSA, YANEZ, and RODRIGUEZ.

## OPINION ON MOTION FOR RECONSIDERATION

Opinion by Justice RODRIGUEZ.

We grant appellants' motion for reconsideration, deny the motion for reconsideration *en banc*, withdraw our opinion dated January 28, 1999, and substitute the following opinion in its place.

Lisa and Michael Honeycutt, appellants, appeal a take-nothing judgment in a personal injury case whereby the jury found KMart twenty percent negligent and Lisa Honeycutt ("Honeycutt") eighty percent negligent. We reverse and remand.

This case arose out of injuries allegedly sustained by Honeycutt while she was shopping at a KMart store in Portland, Texas. Honeycutt and her children were waiting in line at cash register one. Cash register one is adjacent to a "cart corral" (an area where shopping carts are located near the front of the store). Normally, there are two rails separating the cart corral from the aisle of cash register one. However, on the day of the accident, the

upper rail was missing at one end of the cart corral. While waiting in line, Honeycutt sat on the lower rail at the location where the top rail was missing. Thereafter, Robledo, a KMart employee, unable to see Honeycutt because of shopping carts in the corral, pushed additional carts into the corral, causing the existing carts to strike Honeycutt, allegedly injuring her.

Appellants brought suit asserting Honeycutt's injuries were caused by KMart's negligence. The jury found Honeycutt eighty percent comparatively negligent and KMart only twenty percent negligent. The trial court entered a take-nothing judgment against appellants. This appeal followed.

In their second point of error, appellants assert the trial court erred in excluding the testimony of appellants' expert, Dr. Waymon Johnston. In support of its motion to strike, KMart raised three grounds for excluding Dr. Johnston's report and testimony:

(1) Dr. Johnston's report and testimony failed to meet the standards set by the Texas Supreme Court in *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549 (Tex.1995);

(2) Dr. Johnston allegedly trespassed onto KMart's premises in violation of civil procedure rule 167; and

(3) Dr. Johnston's report did not prove his familiarity with the legal issues underlying parts of that report.

Because the trial court did not specify upon which ground it granted KMart's motion to strike, we will affirm the trial court if any ground is supported by the evidence. *See Ortiz v. Spann*, 671 S.W.2d 909, 914 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.) (citing *Gulf Land Co. v. Atlantic*

*Refining Co.*, 134 Tex. 59, 131 S.W.2d 73, 84 (1939)).

■ We will first address KMart's assertion that the evidence was properly excluded under *Robinson*. Until recently, the admissibility of expert testimony has been somewhat of a conundrum. Courts and practitioners alike have strained to make sense of the *Daubert*[1]/*Robinson* line of cases. Now, with Justice Nathan Hecht's opinion in *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713 (Tex.1998), we have some guidance as to when expert testimony is admissible under rule 702.[2] Specifically, the court reemphasized the *Robinson* holding that to be admissible the expert must be qualified and the testimony must be both relevant and reliable. *Id.* at 718–19. Furthermore, the court clarified that "all" expert testimony, not just novel scientific testimony, is subject to the *Robinson* standards. *Id.* at 722. Finally, the court held that: (1) to be qualified, "those who purport to be experts [must] truly have expertise concerning the actual subject about which they are offering an opinion,"[3] *id.* at 719 (quoting *Broders v. Heise*, 924 S.W.2d 148, 152 (Tex. 1996)), and (2) there must be a "nexus" between the expert's opinion and the facts of the particular case—*i.e.*, the opinion must not be admitted where it is connected to the data in the case only by the *ipse dixit* of the expert. *Id.* at 727 (quoting *General Elec. Co. v. Joiner*, 522 U.S. 136, 118 S.Ct. 512, 519, 139 L.Ed.2d 508 (1997)).

In light of the supreme court's holding in *Gammill*, appellants argue that the trial court erred in excluding Dr. Johnston's testimony under *Robinson* because the *Robinson* "factors" do not apply to testimony based upon an expert's knowledge and experience.

**1.** *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

**2.** TEX. R. EVID. 702.

**3.** The court noted in *Gammill* that merely because a person has some specialization related to the issues in the case, they are not

necessarily qualified to testify as an expert. *See Gammill*, 972 S.W.2d at 719 (stating that "[j]ust as not every physician is qualified to testify as an expert in every medical malpractice case, not every mechanical engineer is qualified to testify as an expert in every products liability case").

While *Robinson* gave us a non-exhaustive list of factors to consider in assessing the admissibility of expert testimony, *Robinson,* 923 S.W.2d at 557, it further provided such testimony must meet a specified standard of reliability and relevance under rule 702.[4]  *Id.* at 556.  It is this standard by which expert testimony is measured.  In its analysis of *Daubert,* the *Gammill* court explains:

> In determining whether Daubert applies to particular expert testimony, some courts have confused two aspects of Daubert: on the one hand, the construction of Rule 702 to require that expert testimony be reliable and relevant, and on the other hand, the considerations to be used in determining the reliability of scientific opinion. . . .  The reliability and relevance prerequisites for expert opinion to be admissible are part of Rule 702 and apply to all such evidence.  In that sense, Daubert applies to all expert testimony.  Daubert does not apply in the sense that the considerations it set out for determining whether the prerequisites are satisfied cannot be applied to all types of evidence.  As the court in *McKendall [v. Crown Control Corp.,* 122 F.3d 803, 806 (9thCir. 1997)]* explained: "[I]n ruling on admissibility, trial judges are the gatekeepers and should pay particular attention to the reliability of the expert and his or her testimony.  In that sense, Daubert applies to all expert testimony."

*Gammill,* 972 S.W.2d at 726.  The *Gammill* court then held that this rule is equally applicable to expert testimony under *Robinson.*  *Id.* at 727.  Consequently, all expert testimony, regardless of whether it can be analyzed using the specific factors set forth in *Robinson,* must satisfy the *Robinson* standard for reliability and relevance.  *Id.; see also Robinson,* 923 S.W.2d at 556–57.  We hold Dr. Johnston's proposed testimony was governed by *Robinson.*

Next, appellants claim the trial court abused its discretion in excluding Dr. Johnston's testimony because it met the requirements of rule 702 and *Gammill.*

Based upon the court's opinion in *Gammill,* any allegation that Dr. Johnston's testimony satisfied rule 702 or *Gammill,* necessarily includes an assertion that it met the requirements of *Robinson.* *Gammill,* 972 S.W.2d at 726–27 (holding *Robinson's* relevance and reliability requirements apply to all expert testimony offered under rule 702).  Therefore, the question before this court is: (1) whether Dr. Johnston was qualified to testify, and (2) if qualified, whether his testimony met the relevance and reliability requirements of *Robinson.*

Dr. Johnston has a Ph.D. in industrial engineering, with a specialty in human factors and ergonomics.  He is a registered professional engineer in the State of Texas and a certified safety professional.  From 1969 to 1993, he was head of the safety engineering program at Texas A & M University and has taught courses there in occupational safety, system safety, and human factors engineering.  He is well-published in the field and has been a full-time consultant in the areas of safety and human factors engineering since 1993.  He has consulted with management on safety for other retail stores.

Dr. Johnston was going to testify that the lack of a top rail on the cart corral served as an invitation for shoppers to sit on the bottom rail, that it created an unreasonable risk, and was the proximate cause of the accident.  He further would

---

**4.** Rule 702 states "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Tex.R.

Evid. 702.  We note that effective March 1, 1998, the Texas Rules of Evidence replaced the former Texas Rules of Civil Evidence.  The amendments to these rules in no way affect this case.  Therefore, unless otherwise indicated, all references to the rules are to the current version.

have stated that Robledo was not properly trained in returning carts to the cart corral and that she failed to keep a proper lookout. Finally, he opined that KMart was negligent in failing to replace the top rail and that Honeycutt was not contributorily negligent. We hold Dr. Johnston was "qualified" to testify to the above opinions.

■ Next, we must ascertain whether Dr. Johnston's opinions were relevant and reliable. At a hearing outside the presence of the jury, and through a bill of exceptions, Dr. Johnston testified that he had examined the site of the accident, photographs of the site, and that he had reviewed the depositions in the case. He said that, relying on his training and experience identifying hazards, the lack of a top rail at the scene presented an unreasonable risk of injury to shoppers and employees, and that it constituted a hazardous condition. He said that in safety engineering, he does not perform tests to see if someone can be hurt, but rather looks at conditions to determine whether they have the potential to cause serious injury or death. He testified that, but for the absence of the top rail, the accident would not have occurred.

The court admitted Dr. Johnston's affidavit which explained that he, as a safety engineer, applies basic, well-established principles of hazard identification in the workplace. His specialty involves safety inspections designed to identify unsafe acts and conditions. He explained that his opinions regarding what KMart should have known were based on the facts contained in depositions, photographs, and discovery material. His affidavit further stated:

> My opinions relative to the missing top rail presenting an invitation for shoppers to sit on the railing is also not based on speculation but is as a result of my investigation of this matter and my training and experience as a human factors engineer in regards to expected human behavior and expected human tendencies. As both a safety engineer and

a human factors engineer with extensive experience in the design of chairs and seating, it is my opinion that one could not sit on the mid-rail in question comfortably if the top rail had been present as it should have been. This has been verified by field testing of this condition.

Dr. Johnston's affidavit further elaborates his qualifications as an expert in the safety field by virtue of his twenty years of experience as head of the safety engineering program at Texas A & M University, and from having investigated over 1,000 accidents for causation. Dr. Johnston's affidavit was offered to the trial court during his qualification hearing.

On cross-examination, counsel effectively established that Dr. Johnston's testimony was based on his expertise in the field of human behavior rather than on any scientific testing or experimentation he had performed as a scientist/engineer. Dr. Johnston testified the missing top rail presented an unsafe invitation for Honeycutt to sit and rest while waiting in line at the checkout counter.

Arguing for admission of the testimony, appellant explained Dr. Johnston's opinions were garnered from his ample experience following an investigation of the facts. KMart objected based on Dr. Johnston's lack of special expertise regarding the subject matter of his testimony and on the basis that he was not relying on scientific principles designed to aid the jury.

While Dr. Johnston is qualified to testify as a scientific expert, it is obvious by his testimony that his opinions are based upon his "experience." The *Gammill* court explained the inherent difficulty in assessing the reliability of experience-based testimony by its reference to the "beekeeper analogy" as stated in *Berry v. City of Detroit*, 25 F.3d 1342 (6th Cir.1994). The *Berry* court noted that:

> If one wanted to explain to a jury how a bumblebee is able to fly, an aeronautical engineer might be a helpful witness. Since flight principles have some univer-

sality, the expert could apply general principles to the case of the bumblebee. Conceivably, even if he had never seen a bumblebee, he still would be qualified to testify, as long as he was familiar with its component parts.

On the other hand, if one wanted to prove that bumblebees always take off into the wind, a beekeeper with no scientific training at all would be an acceptable expert witness if a proper foundation were laid for his conclusions. The foundation would not relate to his formal training, but to his firsthand observations. In other words, the beekeeper does not know any more about flight principles than the jurors, but he has seen a lot more bumblebees than they have.

*Berry,* 25 F.3d at 1349–50 (emphasis omitted). Because Dr. Johnston's testimony is based upon his firsthand observations of human behavior, we evaluate his testimony as we would the beekeeper.

Applying the general reliability principles of *Robinson* but not its specific factors, we find that Dr. Johnston's opinions were based upon his study of how humans act and react in certain situations, known as safety and human factors engineering. He explained the relationship between these engineering theories and how the absence of a top rail on the cart corral was inviting to Honeycutt, how it was an unreasonable risk of harm, and how it was the proximate cause of her injuries. He further opined that Robledo was improperly trained, KMart was negligent, and Honeycutt was not contributorily negligent. Again, these opinions were based upon his extensive experience as a safety and human factors engineer. We hold Dr. Johnston's testimony satisfied the general reliability requirements of *Robinson.* Accordingly, it would have been an abuse of discretion for the trial court to have excluded his testimony under *Robinson.* To hold otherwise, would be to preclude the testimony of any experience-based expert.

The supreme court clearly did not intend this result by its opinion in *Gammill.*

■ We next consider KMart's contention that Dr. Johnston was properly excluded as a witness because appellants did not comply with rule 167 of the Texas Rules of Civil Procedure when Dr. Johnston entered the Portland KMart store to inspect the cart corral.

Procedural rule 167 provides a party may request permission to enter upon the "property in the possession or control of the [other] ... for the purpose of inspection and measuring, surveying, photographing, testing, or sampling the property or any designated object or operation thereon within the scope of Rule 166b." TEX.R. CIV. P. 167. It is KMart's position that Dr. Johnston violated this rule by entering the KMart store during regular store hours to "observe" the scene of the accident and, therefore, his testimony should be excluded. KMart cites *Schenck v. Ebby Halliday Real Estate, Inc.,* 803 S.W.2d 361, 372 (Tex.App.—Fort Worth 1990, no writ) and *Day & Zimmermann, Inc. v. Strickland,* 483 S.W.2d 541, 546 (Tex.Civ.App.—Texarkana 1972, writ ref'd n.r.e.) for this proposition. In both *Schenck* and *Day & Zimmermann,* the expert witnesses were excluded because they *trespassed* upon the other party's property to make an unauthorized inspection of the premises. *See Schenck,* 803 S.W.2d at 371; *Day & Zimmermann,* 483 S.W.2d at 547.

Appellants argue that Dr. Johnston's testimony cannot be excluded under the above caselaw because he was a business invitee and not a trespasser. While we agree that *Schenck* and *Day & Zimmermann* are not dispositive in this case, we cannot agree with appellants that merely being a business invitee exempts parties from adherence to the rules of discovery. Under this reasoning, anytime a party was a business that was open to the public, the other party could send its expert to inspect, measure, survey, photograph, test, or sample the premises without complying

with rule 167. This clearly was not intended by the rule. However, because we hold the infraction in this case was harmless, we need not decide this issue.

■ The decision to exclude evidence for an abuse of discovery will not be disturbed unless the trial court abused it discretion. *Schenck*, 803 S.W.2d at 373. Here, Dr. Johnston entered the KMart store during regular store hours merely to confirm that the photographs he had reviewed accurately depicted the accident scene. Other than this simple observation, he made no other inspection, took no measurements or photographs, performed no tests, nor took any samples while on KMart's premises. Additionally, any information he gained during this brief observation was cumulative of information he had available from other sources. While it may have been a violation of the rule, under the facts of this case, we find there was no harm to KMart by Dr. Johnston's cursory inspection. Accordingly, we hold it would have been an abuse of discretion to exclude Dr. Johnston's testimony on this ground.

■ Finally, we address KMart's assertion that Dr. Johnston's testimony was properly excluded because he failed to prove his familiarity with the legal issues underlying his report. Specifically, KMart argued Dr. Johnston's testimony should be excluded because he did not explain his understanding of the legal meaning of negligence, proximate cause, unreasonableness, and foreseeability.

■ "An expert may give an opinion regarding an ultimate issue . . . as long as the opinion is confined to the relevant issues and *is based upon proper legal concepts.*" *E–Z Mart Stores, Inc. v. Terry*, 794, S.W.2d 63, 64 (Tex.App.—Texarkana 1990, writ denied) (emphasis added); *see Birchfield v. Texarkana Memorial Hosp.*, 747 S.W.2d 361, 365 (Tex.1987); *see also* Tex.R. Evid. 704. While it is true Dr. Johnston wholly failed to explain his understanding of these concepts in his re-

port, this report was included as part of appellants' bill of exceptions along with his testimony where he demonstrated his understanding of "negligence" and "proximate cause." We find this was sufficient to show Dr. Johnston's negligence and proximate cause opinions were based upon proper legal concepts. Accordingly, we hold it would have been error for the trial court to exclude this testimony.

■ Because none of the reasons proffered by KMart justify wholesale exclusion of Dr. Johnston's testimony, we hold it was error for the trial court to exclude this evidence. We must now determine whether this error constituted reversible error. *See Mentis v. Barnard*, 870 S.W.2d 14, 16 (Tex.1994). It is reversible error to exclude expert evidence if the expert's testimony would be "both controlling on a material issue and not cumulative." *Id.; see also Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex.1989). We hold the proffered evidence meets the above criteria. Therefore, it was reversible error for the trial court to have excluded Dr. Johnston's testimony. Appellants' second point of error is sustained.

Based upon the disposition of the above point, we need not address appellants' remaining point of error. Tex.R.App. P. 47.1.

The judgment of the trial court is REVERSED and this cause REMANDED to the trial court for further proceedings not inconsistent with this opinion.