**Jeff PARK and Lynn Park, Individually and as Next Friend and on Behalf of Matt Park, a Minor, Appellants,**

**v.**

**John LARISON and Mark Boles, Appellees.**

**No. 06–99–00105–CV.**

Court of Appeals of Texas, Texarkana.

Submitted July 11, 2000.

Decided Aug. 11, 2000.

Rand P. Nolen, Fleming & Associates, L.L.P., Houston, for appellant.

Cameron Smith Vann, Houston, atty. ad litem.

Jeffrey H. Marsh, Mattingly & Marsh, L.L.P., C. Vance Christopher, Crain, Caton & James, P.C., Jeffrey L. Diamond, Galloway, Johnson, Tompkins & Burr, Houston, David M. Prichard, Ball & Weed, P.C., San Antonio, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice ROSS.

Jeff Park and his wife, Lynn Park, brought this cause of action against John Larison and Mark Boles in an attempt to recover damages for the personal injuries sustained by their minor child, Matt Park, in a four-wheeler accident. At trial, the jury returned a verdict finding that Larison and Boles were not negligent and that Matt was negligent. Pursuant to the verdict, the trial court rendered judgment for the defendants and ordered that the Parks take nothing. On appeal, the Parks contend that the trial court's judgment should be reversed because:

(1) the evidence does not support the jury's answers to the negligence question;

(2) the trial court committed error by excluding the testimony of their human factors expert;

(3) the trial court committed error by refusing to submit their requested jury instruction regarding the legal duty to render services to protect another's person or property; and

(4) counsel for Boles engaged in improper jury argument that could not be cured by an instruction to the jury.

We overrule these contentions and affirm the judgment of the trial court.

In 1994, Larison purchased a four-wheel all-terrain vehicle (a "four-wheeler"). Boles was with Larison when the four-wheeler was purchased. Kawasaki, the manufacturer of the four-wheeler, had placed warnings on the vehicle itself and in the owner's manual. Among the warnings given were the following: a safety training course should be taken before operating the vehicle; the vehicle should not be ridden by anyone under the age of sixteen years; the vehicle should not be ridden without a helmet; and the vehicle should not be ridden with a passenger. Larison and Boles admitted that they saw these warnings and disregarded them. Larison testified that he did not own a helmet for the four-wheeler, and that he regularly rode and allowed others to ride on the four-wheeler with passengers.

On the weekend of September 6, 1996, Larison and Boles went to their deer lease to set up blinds and feeders for the upcoming deer season, and they took the four-wheeler with them. Boles' son, Jacob, invited his friend Matt to come along. Jacob and Matt were both fifteen years old. Matt's parents, the Parks, gave Matt per-

mission to go to the deer lease with Jacob and his father. However, the Parks did not know, nor were they advised, that a four-wheeler was being taken to the deer lease.

On Saturday, September 7, Jacob and Matt assisted Larison and Boles in doing their chores around the deer lease. As Larison and Boles drove from site to site in a pickup truck, Jacob drove the four-wheeler alongside, with Matt riding on the back. Neither boy wore a helmet, and neither boy had ever taken a safety training course. At one point on Saturday, Jacob and Matt were permitted to go off on their own, and Jacob let Matt drive the four-wheeler. Neither Larison nor Boles saw Matt drive the vehicle. Although they had not told Matt that he could not drive, they had not given him express permission to do so. Jacob testified that his father had told him not to let Matt drive the vehicle, but Boles could not recall any such conversation.

On Sunday, September 8, Larison and Boles left the boys unattended for a short time as they made preparations to break camp and return home. The key to the four-wheeler was left in its ignition. The boys had been given instructions to clean up around the campsite, but they took the four-wheeler for a ride instead. While Matt was driving the four-wheeler with Jacob riding on the back, Matt failed to make a turn in the road and crashed head-on into a tree. Jacob testified that Matt had been driving the four-wheeler too fast, but was unsure how fast they were going because the vehicle did not have a speedometer and he could not gauge the speed.

As a result of the accident, Matt suffered severe injuries to his head and face, including at least five skull fractures, permanent brain damage, and blindness in one eye. Part of Matt's brain has been removed, and a titanium plate has been put in his head. Matt is now in the lower one percent of the population in verbal processing learning, and he suffers seizures as a result of his injuries.

In November 1997, the Parks, individually and as next friend of Matt, brought this suit in an attempt to recover damages for the personal injuries sustained by Matt. In their sixth amended petition, the Parks alleged causes of action against Larison, Boles, Kawasaki, and Jack Winkler (the owner of the property that was leased by Larison and Boles). After a trial on the merits, the jury was given a charge that asked, "Did the negligence, if any, of the persons named below [Larison, Boles, Matt, Kawasaki, and Winkler] proximately cause the injury in question?" The jury was properly instructed as to the definition of proximate cause and then was further instructed without objection as follows:

> There may be more than one proximate cause of an event, but there can be only one sole proximate cause. If an act or omission of any person was the sole proximate cause of an occurrence, then no act or omission of any other person could have been a proximate cause.

The jury answered the question "no" as to Larison, Boles, Kawasaki, and Winkler, and "yes" as to Matt. In other words, the jury returned a verdict finding that the negligence, if any, of Larison, Boles, Kawasaki, and Winkler did not proximately cause the injuries and that Matt's negligence did proximately cause the injuries. Pursuant to the verdict, the trial court rendered judgment for the defendants and ordered that the Parks take nothing. The Parks appealed the trial court's judgment as to Larison and Boles only.

In their first point of error, the Parks contend that the evidence does not support the jury's answers to the negligence question. The Parks argue that the evidence is legally insufficient to support the jury's finding of Matt's negligence, and that the evidence is factually insufficient to support the jury's findings that Larison and Boles were not negligent. The Parks contend that Jacob's testimony is the only evidence of Matt's negligence and that it is so weak it amounts to no evidence at all. The

Parks acknowledge that Jacob testified that Matt was driving too fast, but the Parks point out that Jacob also testified that the four-wheeler did not have a speedometer and that he could not gauge speed when he was on the vehicle. The Parks further contend that, contrary to the jury's findings, the great weight and preponderance of the evidence confirms that Larison and Boles were negligent: they failed to instruct Matt that he could not drive the four-wheeler; they failed to provide any helmets in direct disregard of the manufacturer's warnings; they permitted Matt and Jacob to ride the vehicle despite the manufacturer's warnings that the vehicle was not to be used by children under sixteen years old; they permitted two people on the vehicle at one time in further disregard of the manufacturer's warnings; they permitted Matt and Jacob to use the vehicle, although neither had taken a safety training course or had been properly trained; and they left the key to the vehicle in the ignition.

■ In reviewing the evidence for legal sufficiency, we must determine if more than a scintilla of evidence supports the jury's finding. *Read v. Scott Fetzer Co.*, 990 S.W.2d 732, 737 (Tex.1998). As such, we must determine whether the proffered evidence as a whole rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex.1994). We must consider only the evidence and inferences supporting the jury's findings and disregard all evidence and inferences to the contrary. *Redman Homes, Inc. v. Ivy*, 920 S.W.2d 664, 667 (Tex.1996).

■ When considering a factual sufficiency challenge to a jury's verdict, we must consider and weigh all of the evidence, not just that evidence which supports the verdict. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07

(Tex.1998). We can set aside the verdict only if it is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex.1996). We may not pass on the witnesses' credibility or substitute our judgment for that of the jury, even if the evidence would clearly support a different result. *Maritime Overseas Corp.*, 971 S.W.2d at 407.

■ Applying these standards, we find that the evidence is legally sufficient to support the jury's finding of Matt's negligence. The fact that Matt failed to make the turn in the road and crashed into the tree supports an inference that he was driving too fast. This circumstantial evidence, coupled with Jacob's testimony that Matt was driving too fast, amounts to more than a scintilla of evidence that Matt was negligent. Likewise, we find that the evidence is factually sufficient to support the jury's finding that any negligence on the part of Larison and Boles did not proximately cause Matt's injuries. Although the record is replete with evidence that Larison and Boles breached their duty of ordinary care, it was not against the great weight and preponderance of the evidence for the jury to find that Matt's negligence was the sole proximate cause of the accident. Therefore, we conclude that the jury's answers to the negligence question are supported by the evidence. We overrule point one.

In point two, the Parks contend that the trial court committed error by excluding their expert's testimony. The Parks attempted to call Dr. Edward Karnes as an expert witness at trial. Karnes had been properly designated as an expert, had been deposed, and portions of his deposition testimony had been designated for trial use pursuant to the "Joint Trial Preparation Order." The record does not reflect that any of the defendants had previously objected to this expert.[1] Yet, when

1. Larison and Boles contend they had previously informed both the trial court and the

Parks that they had objections to Karnes.

Karnes was called to the stand, both Larison and Boles objected to his testifying before the jury. The Parks contended that these objections had been waived by failing to object to Karnes' testimony at pretrial. The trial court sustained the defendants' objection to Karnes' testimony on the basis of Rule 702 of the Rules of Evidence.

The record reflects that Karnes would have testified that he has a Ph.D. in experimental psychology, he is board certified as a human factors engineer, and he is one of the foremost experts in the area of human factors, or ergonomics.[2] He worked fourteen years as a human factors research scientist for NASA and Martin Marietta, Inc. He was a psychology professor and the chair of the psychology department at Metropolitan State College for twenty-one years. He has authored forty to fifty publications in the area of human factors, eight of which focus on all-terrain vehicles. He has also conducted and published tests on the reaction of adults and adolescents to all-terrain vehicles and the warnings placed on such vehicles.

Karnes would have testified that in his opinion the warnings on Larison's four-wheeler were adequate to apprise a reasonable adult of the hazards involved and the safety measures that should be employed in using the vehicle. As such, in Karnes' opinion Larison and Boles failed to exercise reasonable and appropriate care in allowing children under sixteen years old to operate the vehicle, without proper training, without a helmet, and with a passenger. Karnes would have further testified that in his opinion Matt did not act imprudently in using the four-wheeler which had been provided for him because a fifteen-year-old's response to warnings and his ability to perceive risks is quite different from that of an adult. Also, in Karnes'

opinion, Matt's misuse of the vehicle was reasonable because adolescents model their use of these vehicles after adults, and Larison and Boles had ridden the vehicle with a passenger, without a helmet, and without proper training. Karnes would have testified that his aforementioned opinions were based on his published studies and the learned treatise, "The Personal Fable," by Elkind, published in 1967.

The Parks contend that the trial court should not have excluded Karnes' expert testimony because (1) Larison's and Boles' objections to the expert were untimely, and (2) the expert's testimony, as reflected by an offer of proof, met all the requirements for admissibility under Rule 702 of the Texas Rules of Evidence.

■ We first hold that the defendants' objections were timely. Generally, an objection to evidence is timely if it is made at the time the evidence is offered or, in the case of oral testimony, at a time preceding the witness' answer. *Reed v. State,* 927 S.W.2d 289, 291 (Tex.App.-Fort Worth 1996, no writ); *Celotex Corp. v. Tate,* 797 S.W.2d 197, 205–06 (Tex.App.-Corpus Christi 1990, writ dism'd by agr.). We acknowledge that the trial court may, pursuant to a pretrial order, require the parties to make certain specified objections before trial, so as to assist in the disposition of the case. *See* Tex.R. Civ. P. 166; *Owens–Corning Fiberglas Corp. v. Malone,* 916 S.W.2d 551, 557 (Tex.App.-Houston [1st Dist.] 1996), *aff'd,* 972 S.W.2d 35 (1998). However, the Parks did not contend at the time of trial that the defendants' objections were waived due to a pretrial order. Further, the pretrial order in this case did not state that the parties would suffer waiver if they failed to properly make their objections pretrial.[3] We

This contention is not supported by the record.

2. Ergonomics is the study of the relationship between humans and machines.

3. The pretrial order did state that the parties were required to file objections to deposition testimony fourteen days before the trial setting. And, the order states that objections to videotape would be waived if not made twenty-four hours before the testimony. However,

therefore conclude that the defendants' objections to Karnes' expert testimony were timely.

We further conclude that the trial court did not commit error by excluding Karnes' testimony. A trial court has broad discretion in deciding whether to admit expert testimony, and its decision will not be disturbed on appeal absent an abuse of discretion. *GTE Southwest, Inc. v. Bruce,* 956 S.W.2d 636, 640 (Tex.App.-Texarkana 1997), *aff'd,* 998 S.W.2d 605, 620 (Tex.1999); *see also United Blood Servs. v. Longoria,* 938 S.W.2d 29, 30–31 (Tex.1997). Under Rule 702 of the Texas Rules of Evidence, the trial court must determine if the proposed expert has "knowledge, skill, experience, training, or education" that would *"assist the trier of fact."* Tex.R. Evid. 702 (emphasis added). Expert testimony assists the trier of fact when the expert has knowledge or experience on a relevant issue beyond that of the average juror and the testimony helps the trier of fact understand the evidence or determine a fact issue. *See $18,800 in U.S. Currency v. State,* 961 S.W.2d 257, 265 (Tex.App.-Houston [1st Dist.] 1997, no writ); *Glasscock v. Income Property Servs., Inc.,* 888 S.W.2d 176, 180 (Tex.App.-Houston [1st Dist.] 1994, writ dism'd by agr.). The burden of establishing an expert's qualifications is on the offering party. *Broders v. Heise,* 924 S.W.2d 148, 151 (Tex.1996).

In the present case, Karnes' testimony went to whether the conduct of Larison, Boles, and Matt was reasonable and prudent. As such, the expert's testimony involved issues within the common knowledge of the average juror. Such testimony does not *assist the jury* as is required by Rule 702. When the jury is equally competent to form an opinion regarding an ultimate fact issue, an expert's testimony as to those issues is properly excluded. *GTE Southwest, Inc.,* 956 S.W.2d at 640 (it was error for the trial court to admit expert testimony that defendant's conduct was extreme and outrageous). We therefore conclude that it was not an abuse of discretion for the trial court to exclude Karnes' testimony.[4] Point two is overruled.

In point three, the Parks contend that the trial court committed error by refusing to submit their requested instruction regarding one's duty to render services to protect another's person or property. The requested instruction stated the following:

> You are instructed that a defendant who undertakes, gratuitously or for consideration, to render services necessary to protect another's person or property is liable to that person for physical harm resulting from the failure to exercise reasonable care to perform the undertaking if either (1) the defendant's fail-

the order further stated, "Failure to comply with the foregoing *may* result in exclusion of exhibits, witnesses, or motions. Failure to review items tendered by opposing counsel *may* result in waiver of objection thereto" (emphasis added). Thus, the matter of waiver was generally left to the trial court's discretion.

**4.** At oral argument, the Parks cited *Honeycutt v. KMart Corp.,* 1 S.W.3d 239 (Tex.App.-Corpus Christi 1999), to support their argument that the exclusion of Karnes' testimony was an abuse of discretion. In *Honeycutt,* the Corpus Christi Court of Appeals held that it was an abuse of discretion for the trial court to have excluded a human factors expert's testimony as to the following: (1) the lack of a top rail on a shopping cart corral presented

an unreasonable risk of injury; (2) the plaintiff would not have been hit by a shopping cart but for the lack of a top rail; (3) K-Mart's employee was not properly trained in pushing shopping carts; (4) K-Mart's employee failed to keep a proper lookout while pushing the shopping carts into the cart corral; (5) the plaintiff was not contributorily negligent by sitting on the lower rail of the cart corral. The Texas Supreme Court recently reversed the Corpus Christi appellate court, holding that it was not an abuse of discretion to exclude the expert's testimony because it did not help the trier of fact understand the evidence or determine a fact issue. *See K-Mart Corp. v. Honeycutt,* 24 S.W.3d 357 (2000). We find the Texas Supreme Court's opinion to be in accordance with our decision.

ure to exercise care increases the risk of harm, or (2) the harm is suffered because the other person relied on the defendant's undertaking.

The Parks contend that this instruction should have been submitted because the jury needed to be advised of the duty that Larison and Boles owed to Matt.

■ Rule 277 of the Texas Rules of Civil Procedure requires the trial court to submit "such instructions and definitions as shall be proper to enable the jury to render a verdict," TEX.R. CIV. P. 277; *State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 451 (Tex.1997), but "[t]he jury need not and should not be burdened with surplus instructions." *Acord v. General Motors Corp.*, 669 S.W.2d 111, 116 (Tex.1984). The trial court has considerable discretion in determining what jury instructions are necessary and proper. *Louisiana–Pacific Corp. v. Knighten*, 976 S.W.2d 674, 676 (Tex.1998). A trial court's refusal to submit a requested instruction will not be overturned on appeal unless the trial court abused its discretion. *Magro v. Ragsdale Bros., Inc.*, 721 S.W.2d 832, 836 (Tex.1986).

■ The instruction requested by the Parks is a correct statement of Texas law, in accordance with the Texas Supreme Court's holding in *Colonial Savings Association v. Taylor. See Colonial Sav. Ass'n v. Taylor*, 544 S.W.2d 116, 119–20 (Tex. 1976) (adopting the Restatement (Second) of Torts, § 323). However, it is not necessary or proper to include every correct statement of the law in the jury charge. *See Acord*, 669 S.W.2d at 116. The instruction requested by the Parks discusses the extent of one's legal duty to render services to protect another's person or property. Duty is an issue of law for the court; not the jury. As such, the requested instruction was not necessary to enable the jury to render a verdict. *See Maddox v. Denka Chem. Corp.*, 930 S.W.2d 668, 671 (Tex.App.-Houston [1st Dist.] 1996, no writ) (it was error for the trial court to submit an instruction on a landowner's duty to an independent contractor). We

therefore conclude that it was not an abuse of discretion for the trial court to refuse to submit the Parks' requested instruction. Point three is overruled.

■ In point four, the Parks contend that counsel for Boles engaged in improper jury argument that could not have been cured by an instruction to the jury. Specifically, the Parks contend that counsel improperly informed the jury of the legal effect of its answers. During closing argument, counsel for Boles advised the jury:

> I've written in that I don't think John Larison was negligent. I don't think Mark Boles was. I think Matt Park as I told you at voir dire, Matt Park made a mistake and he is 100 percent responsible for his actions. .... So that when you come now to the yes, no, no, no, on the others you need not go further. .... If you only say Matt, you only say one person, then you're done. If you say more than one, then you come to this issue of percentages....

The Parks contend that this argument informed the jurors that the plaintiffs would take nothing if the jury found that Matt was negligent and the defendants were not negligent, and that the argument was therefore improper. And, the Parks point out that the jurors apparently heeded this argument since they did not answer the damages questions.

■ Generally, a jury should not be informed of the legal effect of its answers to the questions in the jury charge. *Louisiana & Arkansas Ry. Co. v. Capps*, 766 S.W.2d 291, 295 (Tex.App.-Texarkana 1989, writ denied); *Magic Chef, Inc. v. Sibley*, 546 S.W.2d 851, 857 (Tex.Civ.App.-San Antonio 1977, writ ref'd n.r.e.). Nevertheless, it is not error to incidentally inform the jury of the effect of its answer by instructing the jury to answer a damages question only if some condition has been met. Rule 277 authorizes courts to use *instructions* to condition a damage question on an affirmative finding of liability, and the Texas Supreme Court has held

that such an *instruction* is not improper since it merely incidentally informs the jury of the legal effect of its answers. TEX.R. CIV. P. 277; *H.E. Butt Grocery Co. v. Bilotto,* 985 S.W.2d 22, 24 (Tex.1998). Logic dictates that an *argument* which incidentally informs the jury of the effect of its answers in a similar manner would also be permissible. Therefore, we conclude that counsel's argument directing the jury not to answer a damages question if there was no finding of liability was not improper. Yet, even if it was improper, it would not be reversible. If jurors through the exercise of ordinary intelligence can determine the effect of their answers, such improper argument is harmless because it does nothing more than tell the jury what it already knows. *Capps,* 766 S.W.2d at 295–96; *Magic Chef, Inc.,* 546 S.W.2d at 857–58. Through the exercise of ordinary intelligence, the jury in the present case could have determined that the Parks would not recover damages if it found that all the defendants were not negligent and that Matt was negligent. Point four is overruled.

The judgment of the trial court is affirmed.